**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| DRAGON YACHTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 6:25-cv-01089 |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| LONDON MARINE INSURANCE | ) |
| SERVICES LIMITED and | ) |
| SELECTA INSURANCE AND | ) |
| REINSURANCE COMPANY | ) |
| CARIBBEAN LIMITED, | ) |
| | ) |
| Defendants. | ) |

**AMENDED COMPLAINT**

Dragon Yachts, LLC, by its undersigned attorneys, states its amended complaint against London Marine Insurance Services Limited and Selecta Insurance And Reinsurance Company Caribbean Limited as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Dragon Yachts, LLC, is a limited liability company whose members solely are citizens of the State of Florida and reside in Palm Bay, Florida, within this judicial district.

2. London Marine Insurance Services Limited is an insurance company organized under the laws of the United Kingdom of Great Britain and Northern Ireland with its principal place of business in London, England.

3. Selecta Insurance And Reinsurance Company Caribbean Limited is an insurance company, upon information and belief, that is organized under the laws of the

West Indies with its principal place of business in the Federation of Saint Kitts and Nevis, West Indies.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of Florida and citizens of a foreign state, the United Kingdom and the Federation of Saint Kitts and Nevis.

5. Venue is appropriate in this judicial district where a substantial part of the events or omissions giving rise to the claim occurred pursuant to 28 U.S.C. § 1391(b)(2).

6. Venue also is appropriate in this judicial district where Defendants are subject to personal jurisdiction pursuant to 28 U.S.C. § 1391(b)(3):

   a. by issuing an insurance policy to residents of Palm Bay, Florida and delivering it to them there, subjecting itself to this Court's personal jurisdiction; and

   b. by operation of law pursuant to Florida Statute § 626.906 because neither Defendant is registered and/or authorized to do business in Florida by the Florida Department of Financial Services.

## FACTUAL BACKGROUND

7. On June 8, 2023, London Marine Insurance Services Limited issued a "Yacht Insuring Agreement" to Dragon Yachts, LLC, insuring the sailing vessel S/Y MOON DRAGON for "Yacht Hull, Machinery and Liability" for the stipulated or "agreed value" of $2,050,000 for the yacht and $10,000 for her tender. A true and correct copy of the insurance policy is attached hereto and incorporated herein as Plaintiff's **Exhibit "A"**. A

true and correct copy of the corresponding Confirmation of Cover is attached hereto and incorporated herein Plaintiff's **Exhibit "B"**.

8.      S/Y MOON DRAGON is owned by Dragon Yachts, LLC.   Collectively, Dragon Yachts, LLC and its members will be referred to herein as vessel "Owners."

9.      London Marine Insurance Services Limited issued the policy after reviewing vessel documentation and approving Owners' proposed operating company.   London Marine Insurance Services Limited did not request any vessel surveys or maintenance records prior to undertaking the risk.

10.      London Marine Insurance Services Limited later approved the licensed captain for the voyage in question, which commenced on October 15, 2023 in a fresh breeze off Annapolis, Maryland.

11.      On October 21, 2023, the S/Y MOON DRAGON sank in a near gale producing 30-knot winds approximately 150 nautical miles off the coast of North Carolina, within the United States Exclusive Economic Zone (Proclamation 5030, 48 F.R. 10605, 3 C.F.R., 1983 Comp., p. 22 (Mar. 10, 1983)), and within the 250-nautical mile limit contained in the insurance policy.

12.      Commencing October 22, 2023, Dragon Yachts, LLC, made claims against London Marine Insurance Services Limited in the face amount of the policy, $2,060,000, as the S/Y MOON DRAGON and her tender eventually sank and constituted a total loss without salvage.

13.      As part of Dragon Yachts, LLC's claims against London Marine Insurance Services Limited, it was required to fill out a pre-drafted form and send back to London Marine Insurance Services Limited to describe the vessel and how S/Y MOON DRAGON

sank. Included in the pre-drafted form provided by London Marine Insurance Services Limited was a reference to Selecta Insurance And Reinsurance Caribbean Limited.

14. Dragon Yachts, LLC and its members complied with all requests for information from London Marine Insurance Services Limited and performed all conditions required on its and its members' part, including the full payment of premiums from Owners' bank accounts in Florida. Dragon Yachts, LLC and its members complied with all requests for information from Selecta Insurance And Reinsurance Caribbean Limited and performed all conditions required on its and its members' part.

15. On March 21, 2025, seventeen months after the loss, London Marine Insurance Services Limited purportedly cancelled the insurance policy "with effect from inception."  A true and correct copy of the cancelation notice is attached hereto and incorporated herein as Plaintiff's **Exhibit "C"**.

16. London Marine Insurance Services Limited based its cancelation, according to its managing director's email, on a post-incident "Expert Statement" authored by Sergei Ivanov, a "third-party loss adjuster" or "First Class Engineer" or "Surveyor" of Marine Cargo Bureau of Saint-Petersburg, Russian Federation ("Ivanov Report"), hired by "Sun Underwriting MGA," whose connection to this claim is not explained in his report.  A true and correct copy of the Ivanov Report is attached hereto and incorporated herein as Plaintiff's **Exhibit "D"**.

17. The Ivanov Report asserted that the S/Y MOON DRAGON was not seaworthy and that the "CAUSE OF YACHT SINKING" was four reasons, here quoted in their entirety:

The main cause of the MOON DRAGON sinking consisted in the yacht unseaworthiness due to the following reasons and circumstances:

- Only 4 operable batteries of "hotel" battery bank. The only 4 operable batteries demanded the constant running of the separate 230 VAC electric diesel-generator and additional fuel stock for the sea passage.

- The loading of approx. 1336 kg of "fuel + drums" weight at Yankee Point Marina, Virginia created improper weight distribution, impaired yacht stability and increased yacht rolling and pitching. The loading of fuel on the yacht weather decks over yacht gravity center is prohibited in the yacht Owner's Manual (see section 12 above). Stability letter and stability booklet mentioned in Small commercial vessel certificate of safety were not provided by the yacht owner.

- The reported leak through the portside rudder impaired the yacht safety at sea.

- The yacht communication means were not available / operable, lost in heavy weather or not used during the emergency development thus the weather monitoring and timely distress calls were not realized.

The yacht unseaworthiness was accompanied and supplemented by the lack of the proper sea passage planning and weather monitoring.

**Exhibit "D" at 17**.

18.    The Ivanov Report does not assert that any of the foregoing asserted conditions of unseaworthiness existed prior to the time the insurance coverage attached.

19.    The Ivanov Report does not assert any actual knowledge by the vessel owner, Dragon Yachts, LLC, or its members, of any of the foregoing asserted conditions of unseaworthiness at any time, including upon commencement of the voyage at issue.

20.    When Owners last saw her at the Annapolis Boat Show before commencement of the voyage on October 15, 2023, S/Y MOON DRAGON was in pristine condition, her rudder did not leak, no fuel drums were stowed on deck, and she was

equipped with a Starlink Satellite System, a Garmin inReach Satellite Communicator, and several VHF radios.

21.    In the hands of a licensed captain whom London Marine Insurance Services Limited had approved in advance for this specific voyage, and his experienced crew of three additional yachtsmen (including another licensed captain), Owners reasonably and verily believed S/Y MOON DRAGON to be seaworthy for the intended voyage, and she was.

22.    S/Y MOON DRAGON is periodically inspected by U.S. Coast Guard licensed surveyors with the U.S. Virgin Island's Commercial Vessel Licensing Authority, which governs her hailing port (St. Thomas, USVI).  Owners shared the U.S. Coast Guard out-of-water Inspection Report, showing zero deficiencies, with London Marine Insurance Services Limited on November 19, 2024.  Her most recent certification was performed in September, 2023, a month before she sank, and like her two prior surveys, no deficiencies indicated.  At all times, Owners reasonably and verily believed S/Y MOON DRAGON to be seaworthy.

23.    With respect to what "conditions" the Ivanov Report asserts show unseaworthiness prior to commencement of the voyage, it is dishonest and deceitful in the following respects (besides failing to indicate any Owner actual knowledge of any of these asserted conditions):

a.    The "hotel battery bank" powers non-propulsion, non-navigation electrical loads such as interior and decorative lighting, entertainment systems, heating and air conditioning, and has nothing to do with the seaworthiness of a vessel;

b.      The weight calculations in section 12 of the Ivanov Report are demonstrably erroneous and fail to account for her true weight, which was well  below her recommended weight limit, primarily by:  (i) sloppy arithmetic in failing to account for the fact that when fuel is combusted, it becomes gas and is expelled through the vessel's engine exhaust system, wafting into weightlessness; (ii) assuming generation of 21⅓ pounds of human waste per hour per crew member, absurdly, while ignoring the attendant reduction in the weight of water and food supplies once consumed, and overlooking weight reduction from the automatic holding tank discharge system when the vessel is more than three miles off shore; and (iii) exaggerating the weight of the fuel containers and tender and assuming the weight of additional equipment that was not aboard;

c.      The portside rudder shaft seal was not leaking during the Annapolis Boat Show, and when a minor leak first occurred after the commencement of the voyage, the bilge pumps removed water as necessary, as stated in the three crew statements that discuss the rudder shaft leak and supposedly were reviewed (of Captain Jason Kindree, Warren Schoeppe and David Boyko);

d.      Communications were available, as indicated in *all* crew statements the Ivanov Report purported to review (Captain Jason Kindree—used "radio," Darin Speight—used "VHF" and "EPIRB," Warren Schoeppe—used "radio" and "two transponders," and David Boyko—used

VHF radios on the flybridge, handheld VHF, Starlink System and transponders), but went down with the ship; and

e.    Weather was constantly monitored, as indicated in *all* crew statements the Ivanov Report purported to review, and there certainly was no "named windstorm" as the Ivanov Report deceptively implies.

The Ivanov Report recites the absence of equipment and logs that went down with the ship, which is not the same thing as asserting that certain equipment and logs were not in existence when the voyage commenced.  The Ivanov Report deliberately ignores crew statements that contradict its brazen conclusions about equipment and documents that went down on the ship, while disregarding the crew's observations of approaching weather and proper functioning of the bilge pumps.  The Ivanov Report's arithmetic is demonstrably irrational to the point of absurdity.  For the foregoing reasons, the Ivanov Report is intentionally dishonest and deceitful, so London Marine Insurance Services Limited's reliance thereon is correspondingly dishonest and deceitful.

**COUNT I**
**BREACH OF INSURANCE CONTRACT BY LONDON MARINE INSURANCE SERVICES LIMITED**

24.    Dragon Yachts, LLC restates and incorporates the allegations of paragraphs 1—23, inclusive, as though fully set forth herein.

25.    Dragon Yachts, LLC and London Marine Insurance Services Limited entered into a valid and enforceable insurance contract.

26.    Dragon Yachts, LLC performed their obligations under the insurance contract.

27.    London Marine Insurance Services Limited breached the insurance contract by improperly cancelling the insurance policy and refusing to pay a valid claim.

28.    Dragon Yachts, LLC, has been damaged in the face amount of the policy, which is $2,060,000.00, in addition to suffering other recoverable damages.

29.    Despite due demand, London Marine Insurance Services Limited has not paid the claim.

30.    London Marine Insurance Services Limited's reliance on the dishonest and deceitful Ivanov Report is itself dishonest and deceitful, and constitutes willful, wanton and malicious conduct that warrants the imposition of punitive and exemplary damages.

**WHEREFORE**, Plaintiff DRAGON YACHTS, LLC demands judgment in its favor for damages against Defendant, including but not limited to, compensatory damages, punitive and exemplary damages, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

**COUNT II**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**FL ST § 501.201, *et seq*. AGAINST LONDON MARINE INSURANCE**
**SERVICES LIMITED**

31.    Dragon Yachts, LLC restates and incorporates the allegations of paragraphs 1—23, inclusive, as though fully set forth herein.

32.    Dragon Yachts, LLC is defined as a "consumer" within the meaning of Florida Deceptive and Unfair Trade Practices Act, FL ST § 501.202.

33.    At all material times hereto, London Marine Insurance Services Limited was engaged in trade or commerce within the meaning of Florida Deceptive and Unfair Trade Practices Act, FL ST § 501.203(8).

34.    London Marine Insurance Services Limited's cancelation of the insurance policy and refusal to pay the claim based on the Ivanov Report is a deceptive and unfair practice within the meaning of Florida Deceptive and Unfair Trade Practices Act, FL ST § 501.204(1).

35.    London Marine Insurance Services Limited's deceptive and unfair practice caused Dragon Yachts, LLC actual damages in the face amount of the policy, which is $2,060,000.00, in addition to causing other recoverable compensatory damages and attorneys' fees.

36.    London Marine Insurance Services Limited's conduct was likely to mislead consumers acting reasonably under the circumstances, and consumers were actually misled by their actions.

**WHEREFORE,** for the foregoing reasons, Dragon Yachts, LLC, requests that this Court enter judgment in its favor and against London Marine Insurance Services Limited for:

a.    Violation of Florida Deceptive and Unfair Trade Practices Act;

b.    Compensatory damages in the face amount of the policy, which is $2,060,000, plus other compensatory damages that will be proven at trial;

c.    Prejudgment interest as provided by law;

d.    Attorneys' fees;

e.    Costs;

f.    Punitive damages; and

g.    Grant such further relief this Court deems just and proper.

**COUNT III**
**BREACH OF INSURANCE CONTRACT BY SELECTA**
**INSURANCE AND REINSURANCE CARIBBEAN LIMITED**
**(IN THE ALTERNATIVE)**

37.   Dragon Yachts, LLC restates and incorporates the allegations of paragraphs 1—23, inclusive, as though fully set forth herein.

38.   Dragon Yachts, LLC and Selecta Insurance And Reinsurance Caribbean Limited entered into a valid and enforceable insurance contract.

39.   Dragon Yachts, LLC performed their obligations under the insurance contract.

40.   Dragon Yachts, LLC, has been damaged in the face amount of the policy, which is $2,060,000.00, in addition to suffering other recoverable damages.

41.   Despite due demand, Selecta Insurance And Reinsurance Caribbean Limited has not paid the claim.

**WHEREFORE**, Plaintiff DRAGON YACHTS, LLC demands judgment in its favor for damages against Defendant, including but not limited to, compensatory damages, punitive and exemplary damages, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

**COUNT IV**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**FL ST § 501.201, *et seq*. AGAINST SELECTA INSURANCE AND REINSURANCE**
**CARIBBEAN LIMITED**
**(IN THE ALTERNATIVE)**

42.   Dragon Yachts, LLC restates and incorporates the allegations of paragraphs 1—23, inclusive, as though fully set forth herein.

43.   Dragon Yachts, LLC is defined as a "consumer" within the meaning of Florida Deceptive and Unfair Trade Practices Act, FL ST § 501.202.

44.     At all material times hereto, Selecta Insurance And Reinsurance Caribbean Limited was engaged in trade or commerce within the meaning of Florida Deceptive and Unfair Trade Practices Act, FL ST § 501.203(8).

45.     Selecta Insurance And Reinsurance Caribbean Limited's cancelation of the insurance policy and refusal to pay the claim based on the Ivanov Report is a deceptive and unfair practice within the meaning of Florida Deceptive and Unfair Trade Practices Act, FL ST § 501.204(1).

46.     Selecta Insurance And Reinsurance Caribbean Limited's deceptive and unfair practice caused Dragon Yachts, LLC actual damages in the face amount of the policy, which is $2,060,000.00, in addition to causing other recoverable compensatory damages and attorneys' fees.

47.     Selecta Insurance And Reinsurance Caribbean Limited's conduct was likely to mislead consumers acting reasonably under the circumstances, and consumers were actually misled by their actions.

**WHEREFORE,** for the foregoing reasons, Dragon Yachts, LLC, requests that this Court enter judgment in its favor and against Selecta Insurance And Reinsurance Caribbean Limited for:

 a.     Violation of Florida Deceptive and Unfair Trade Practices Act;

 b.     Compensatory damages in the face amount of the policy, which is $2,060,000, plus other compensatory damages that will be proven at trial;

 c.     Prejudgment interest as provided by law;

 d.     Attorneys' fees;

e.     Costs;

f.     Punitive damages; and

g.     Grant such further relief this Court deems just and proper.

**PLAINTIFF DRAGON YACHTS, LLC, DEMANDS TRIAL BY JURY**

Dated: October 21, 2025

Respectfully submitted,

*/s/ Eric L. Hostetler*
Eric L. Hostetler, Esquire
Florida Bar No. 554839
Eric@USLegalTeam.com
John M. Frazier, Jr., Esquire
Florida Bar No. 113676
JFrazier@USLegalTeam.com
Widerman Malek, PL
1990 West New Haven Ave., 2nd Floor
Melbourne, FL 32904
Telephone: 321-255-2332

Paul J. Kozacky, Esquire (*admitted Pro Hac Vice*)
pkozacky@kwmlawyers.com
Jerome R. Weitzel, Esquire (*admitted Pro Hac Vice*)
jweitzel@kwmlawyers.com
Kozacky Weitzel McGrath, P.C.
77 W. Wacker Drive, Suite 4500
Chicago, IL 60601
Telephone: 312-696-0900
***Attorneys for Plaintiff***